Robin Ashton
 Box 1168
Marion, MT 59925
(406) 755-0783
 Pro Se



FILED

SEP 1 4 2015

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| ROBIN ASHTON, Plaintiff and all similarly situated individuals. ) ) v. ) ) STATE OF MONTANA, OFFICE OF ) DISCIPLINARY COUNSEL, JUDICIAL ) STANDARDS COMMITTEE, MONTANA ) MEDICAL LEGAL PANEL, DAWN ) APPLE, DIANE TOMKINS, JEAN ) BRANSCUM, DOE DEFENDANTS # ) 1-45. ) | Cause No. CV 15-96-M-DWM-JCL AMENDED COMPLAINT WITH JURY DEMAND |

## I.  JURISDICTION

Plaintiff incorporates all the below as if set forth herein in full.

1.      This Court has jurisdiction over this matter under 28 USC 1331 because it raises a civil

rights claim against a state or local government employee or entity under 42 USC 1983.  All

wrongs were committed in the state of Montana and all parties are, or reside in the state of

Montana, and includes color of law and RICO.   Under 14th amendment- equal protection clause,

B. Exception: Waiver by States or Abrogation by Congress "The ADA states: "[a] State shall not

be immune under the Eleventh Amendment to the constitution of the United States from an

Cause No. CV 15-96-M-DWM-JCL   p  1 of 30

action in Federal or State court of competent jurisdiction for a violation of this chapter." Ref:

www.nclej.org/ada_manual/chapter_4.htm  All Defendants listed violate the ADA laws and/or

collude with those that do so, are "arms of the state", as noted by the Court, causing damages to

Plaintiff Ashton.  They do not have immunity here and under 18 USC 96 and 1961.

In addition from www.federalpracticemanual.org/node/46 -  "The states are responsible for the
administration of these programs and are required to operate them in compliance with federal law./1/
Beneficiaries may have a claim in federal court if a state violates a federal directive in the administration
or denial of benefits.
In addition to public benefit programs, Congress has enacted a series of laws prohibiting discrimination
based on race, ethnicity, religion, gender, disability, and age./2/ Most of these laws either contain an
express provision allowing suits against states or have been interpreted to allow for such suits./3/ Federal
labor laws protecting employees have also been made applicable to the states./4/ As a result, states may
violate federal statutes if, for example, they expel students with disabilities from state universities, fire
employees who take leave to care for a family member, or refuse to assist prisoners with disabilities with
access to bathroom facilities.

       To remedy violations of these federal laws, an aggrieved individual may seek relief from
states and/or state officials."

## II.  INTRODUCTION

Plaintiff incorporates all the below as if set forth herein in full.

2.     The Defendants through their actions and/or inactions, have shown under color of

law and as individuals, a relationship showing the existence of a pattern; known, willful,

negligent, and/or deliberate collusion, common goals, methods interfering with the justice and

wellbeing of Plaintiff Ashton and the people of Montana.  They are all able to be sued under this,

including portions of RICO, and violations of ADAA laws, resulting in harassment, intimidation,

violation of civil rights and other damages, and the people of Montana, and adding additional

disability to Plaintiff Ashton.

3.     About mid 2014 Plaintiff Ashton became aware through her personal ongoing

experiences with the justice and legislative system in Flathead County in an ongoing chain of

events created through Flathead County MT justice system that the State of Montana is
negligent, and knowingly so in;

4.        -Protecting its' citizens, all of them, from bullying/stalking/harassment..., and does not
enforce the numerous laws already on the books not only from others, but through the legislative
and justice system itself, through the jails, the school systems, Child Protective Services and
those working in them.

5.        -That it has no one that enforces American's with Disabilities Acts laws, all the way
through the State Attorney General and Governor's office, hinders them further with the
unconstitutional law violating the right to record w/o notifying all parties, making it not only
difficult for those with various disabilities (hearing and memory), but aiding in protecting
criminal activity by those committing it. In fact then violates its' own law in recording 911 calls.
(People v. Melongo, Docket No. 114852 Ill. Mar. 20, 2014)

6.        -That it has no REAL legal aid of any kind, including probono available to help pro se
persons, indigent, destitute, or by choice. Per the MT Supreme Court "Court Help Program" it
states among other things "Self Help Law Centers CANNOT Give you legal advice". Referred to
"legal aid" services" to call just have messages that refer you back and forth to each other in a
meaningless loop, and wastes the time, life and energy of MT citizens, and rarely call anyone
back. Thus, making equal access to the justice system unequal, violating MT Constitution,
Article II, Sec. 16. Dismissing Plaintiff's case because it is not professionally written, further
proves this charge.

7.        -That it treats all nonattorney persons filing complaint with court as criminal, contrary to
the stated law, and shows clear bias against the indigent, even when made indigent by the state's

own arms.

8.    -That it does not oversee the proper functioning of its' judicial and legislative branches with its' checks and balances; that its' Judicial Standards Committee actually functions properly, putting the protection safety and welfare of the populace they are there to serve and help protect at risk, thus creating a higher than necessary injury and death rate from murder and suicide than would occur otherwise.

9.    -That it does not see that the Office of Disciplinary Council of the State Bar completes it's work in a timely fashion, in some cases never responds, and at this point Plaintiff still cannot say in what manner it does complete its' work, and aids in preventing justice, or access to it.

10.    -That the jail situation throughout the state is in serious violation of civil and human rights and dignity, and allows cruel and unusual punishment.

11.    -That it does not provide health care for ALL its' citizens, leaving many of us w/o the means to gain necessary medical services, (and denied legitimate medical benefits to Plaintiff Ashton), including no REAL, SAFE, or IMMEDIATE help available for immediate counseling to any and all its' people who are in dire need of it for being suicidal, or any other reason, regardless of income.

12.    -That the Montana Medical Legal Panel is nothing more than a fraud against all the people of Montana, is specifically designed to isolate and intimidate, harass, cause unnecessary and undue difficulty and emotional distress to, and "cause the claimaint to abandon their cause" in any fashion they can manage, including misleading and using the legal ignorance of the people of this state to abandon valid claims that; not to serve the people of the state. It is repugnant to

Cause No. CV 15-96-M-DWM-JCL   p 4

Plaintiff Ashton and the moral sensibilities of the people of Montana, serves only the medical community and attorneys at the cost of real justice and access to justice . Plaintiff Ashton has knowledge of a number of people that collusion by MMLP and with attorneys have occurred, and continues to.

13.  -That Defendant's Dawn Apple, Diane Tomkins and Jean Branscum in working through the Montana Medical Legal Panel lead people including Plaintiff Ashton astray, have vested and biased interests in, and are listed on staff with the Montana Medical Association. They, individually and under color of law, along with MMLP commit fraud upon the people of MT, and violate the ADA laws and processes of MMLP. This is just more of the bullying and abuse allowed to go on, even through our own branches of government, in their purpose for existence.

14.  -That State mismanages our natural, renewable resources, in allowing our forests to unnecessarily burn, by not allowing logging that would prevent most of the massive forest fires, protect the animals and rest of the environment – including clean air, create useful products, jobs, help the economy, and therefore Plaintiff Ashton and the people of MT as a whole.

15.  -The State of Montana does and allows all these things which are repugnant and offensive to the moral sensibilities and/or the law of the land, to the Plaintiff and people of the state of Montana at large. Many of these things are particularly worse for anyone ages 19-59, even more so if they do not have a spouse or children. We appear to be nothing more than garbage by the system in Montana that is suppose to be working not against, but FOR US.

16.  -It shows indifference to its' citizens, denies equal protection, equal access, and state created danger. The State of Montana is in contempt of the United States Supreme Court for at least arbitration causes, shows it has contempt of its' own people which it is exclusively

there for to serve, and is in contempt of Plaintiff Ashton and the people of Montana of their civil and human rights and for all the above.

### III. PARTIES

Plaintiff incorporates all the above as if set forth herein in full.

17.   I. Plaintiff Robin Ashton, Box 1168 Marion, MT 59925, 406-755-0783 is and was at all times relevant to this proceeding a resident of Flathead County Montana, hereinafter "Plaintiff Ashton".

18.   II.  Defendant State of Montana is Montana, 215 N. Sanders, Third Floor, Box 201401, Helena, MT 59620-1401, hereinafter "State".

19.   III. Defendant Office of Disciplinary Counsel, Box 1099, Helena, MT 59624-1099, hereinafter "ODC".

20.   IV. Defendant Judicial Standards Committe, 301 S. Park, Suite 328, Box 203005, Helena, MT 59620-3005, hereinafter "JSC".

21.   V. Defendant Montana Medical Legal Panel, 2021 11th Ave. Suite 1, Helena, MT 59601-4890, hereinafter "MMLP".

22.   VI. Defendant Dawn Apple, is a citizen of the state of Montana, employed by MMLP, 2021 11th Ave. Suite 1, Helena, MT 59601-4890,  hereinafter "Apple".

23.    VII. Defendant Diane Tomkins, is a citizen of the state of Montana, employed by MMLP, 2021 11th Ave. Suite 1, Helena, MT 59601-4890, hereinafter "Tomkins".

24.    VIII.  Defendant Jean Branscum, is a citizen of the state of Montana, employed by MMLP, 2021 11th Ave. Suite 1, Helena, MT 59601-4890, hereinafter "Branscum".

25.    IX.    Defendant, Doe Defendant's #1-45, not yet known, are citizens of the state of

Montana, to the best of Plaintiff Ashton's knowledge.

## IV. FACTUAL ALLEGATIONS

Plaintiff incorporates all the above as if set forth herein in full.

26.    Over a period of months starting about mid 2014 thru Oct. 2014,  as stated in intro.

Plaintiff Ashton learned the State is knowingly negligent in protecting the people in it from

bullying/ stalking, and the other listings progressing on from there to present.

27.     Plaintiff Ashton then learned that there were in fact numerous laws already on the

books, including privacy in communications, stalking and more that address bullying, are not

being enforced, and could not get any relief through court, or any person or entity, though she

had been caused psychiatric injury, severe emotional distress, personal injury and made suicidal.

Please see at least: MCA 40-15-116, 41-3-102, 45-5-221, 45-5-203, 45-5-220, 45-5-201(d), 45-2-

101(5), 45-8-101, 45-8-213, 49-1-101.  These deal with emotional distress, nonphysical assault,

mental impairment as bodily injury, stalking, intimidation, malicious intimidation, abusive

language, and more.

28.     It is inexcusable Plaintiff Ashton has been subjected to the ongoing abuse through

the legal system, when these remedies are readily available, likewise every other individual

similarly subjected in the state of Montana.

29.    About Aug. of 2014 Plaintiff Ashton started learning of  the negligence by State on

ADA laws.   Plaintiff Ashton in fact had what was her first ever panic attack in the victim witness

advocate's office immediately after the (as she later learned) illegal hearing for ADA

accommodations, Nov. 2014, due to her already intense anxiety and suicidal inclinations, having been caused Legal Abuse Syndrome (PTSD through legal abuse; litigation).

30.     About Nov. 2014 it came out in the news that State is negligent in antibullying laws, which Plaintiff had months previously learned firsthand and there is clear bias in lack of protection espcially for those between ages 19-59 years of age.

31.     About Dec. 2014 Plaintiff Ashton filed with the DOJ, for ADA violations.  They sent a list of agencies to call, all of which Plaintiff Ashton had already tried, and then some, including Senator Tester's office, Governor Bullock's office, State and Federal Attorney General's office and Whitehouse in D.C. to find out if there was actually a single entity in the State of Montana that enforces the ADA laws.  If there is, it is very, very well hidden from everyone.

32.     When law firms outside Flathead County, Montana laugh when they hear where your complaint comes from, because they get so many calls on violations, say it is a widespread problem, and that there are still judges that do not even make accommodation for wheelchairs, that is inexcusable, much less for those like Plaintiff Ashton with invisible disabilities.

33.     Even if Plaintiff Ashton had no disabilites including the one now developed from the legal abuse allowed to go on, the violations were made, exist, and must be corrected by State.

34.     Too many individuals have told Plaintiff Ashton "No one does anything", "No one will help, if you are poor and disabled they just want you to die and go away".  Also, from otherwise abused individuals, the same; "No one cares"; those that are in positions to do so.  That is contrary to the purpose of State.

35.     About mid 2014 and following, Plaintiff Ashton quickly learned there is no real legal aid available to pro se persons.  The agencies referred to Plaintiff Ashton, such as, Montana

Legal Services, do not respond, or do nothing. The so called self-help centers give incorrect information, cannot offer legal aid, and there is none available. Plaintiff Ashton repeatedly has heard others while standing in line also saying the help of Defendant State in these matters, is useless. Their online resources are scattered, inaccessible, unorganized, and thus inaccessible to pro se individuals. Probono resources are virtually nonexistant, as are reduced rates.

36.     Plaintiff Ashton was also punished by fine and threats of arrest for having made paperwork mistakes, not doing anything wrong; but mistakes, that would not have occurred had State been diligent in its' duties in these areas and oversight of its' systems.

37.     Further research will likely show State has not lived up entirely to its' suit settlements with ACLU in these matters.

38.     Though all people are suppose to be allowed to have defense, this does not occur, and inhibits Plaintiff Ashton's right (and all individuals) to equal access and protection in the justice system. Plaintiffs are indeed defending themselves, and usually being the victim are definitely the true defendants. Reasonable principal and equity says a person not allowed adequate legal aid in some form, hindering equal access and protection is another violation of the sensibilities of the people, that it shows indifference by State.

39.     Plaintiff Ashton experienced first hand in June 2015 that there is real bias by State against its' people when filing complaints as nonattorneys have their cases treated as if they were all incarcerated. under the law, which is clear is specific to incarcerated only for screening, delaying their cases and potentially letting them languish for months. This is harassment and shows pro se individuals, indigent or otherwise are considered "less than" by State.

40.     While it is reasonable to review a nonattorney drawn up complaint for court for overt

frivolity, the manner it is done in is not acceptable. However, were there real legal aid available, this would become a complete nonissue.

41.    Through Plaintiff Ashton's ongoing abuse by the legal system, she learned that State does not allow Skype to be used in its' courts yet. State needs to get out of it's cave and step into the sunshine. It is inexcusable not to have a readily available, inexpensive resource for court accessible, saving travel, time and money for people when they can view and be viewed as necessary, just as easily from their own location, particularly when they are out of state or out of country. It is only another means impeding the rights of indigent, and/or disabled litigants to have access to not otherwise available witnesses.

42.    Plaintiff Ashton has also learned that in violation of MCA 41-3-205, the right to record public hearings this court has its' own rule it is not allowed. It is also a violation of sometimes necessary ADA accommodations, and a violation of the rights of the people of State, Plaintiff Ashton, and media. Again State needs to come out of the cave, while other states already allow streaming and actual video recording of procedures, which preserves a far more accurate record along with transcript for appeals, as Plaintiff Ashton has observed through her own initial case. Much is lost when there is no audio, much less video record available, and can impede true access to justice for all litigants.

43.    State does not properly oversee the workings of its' judicial branch, ensuring the access to due process, that ADA laws are known, up to date and complied with, justice, protection and safety, in seeing TOP orders are most often given, rather than denied, as experienced multiple times by Plaintiff, and in fact that judges signed a refusal stating they had no care for the people, and support bullying and making people suicidal.

44.     State is also highly negligent in providing adequate resources for the judges themselves in what they are allowed to do in proceeding in cases with pro se litigants.  CA has an excellent guidebook for judges.  State needs to get one, and see that judges comply with the high standards expected by the public, which they chose to serve.

45.     State does not oversee the effective enforcement by Defendant JSC, as Plaintiff Ashton filed two complaints on both judges signing TOP requests stating they support bullying and making people suicidal, denying protection from the ongoing psychiatric injury and emotional abuse and leading to deterioration and injury of Plaintiff Ashton's physical health as well, thus leading to further injury from chain of events landing her in ER, which further escalated psychiatric injury, further escalated by strokes, retinal tear and services for that, with adverse drug reactions, and through Defendant MMLP.

46.      Defendant JSC sent form letter reply, differing only in name of judges, and found no problem with this behavior.  JSC apparently has no teeth, and appears to believe Plaintiff Ashton and the populace of State are nothing more than garbage to be ignored, despite us being the ones who pay for them to do their jobs.

47.     Likewise Defendant ODC, in Plaintiff Ashton's experience is that they do not act in a reasonable amount of time, and in fact have been delaying their investigation until her initial case is completed, which has already been inappropriately allowed to drag on for over 3yrs.   There is no reason ODC could not go through the submitted paperwork and gain any additional information needed from Plaintiff Ashton to be able to do its' job.   We are expected to deal with whatever is thrown at us through the legal system in due time, but the opposite shows favoritism to those working in the system.

48.     ODC's delay has also prevented Plaintiff Ashton in acquiring counsel, *which contacted her,* for case arising from original one for legal malpractice, as they would not take the case until ODC completed their findings, which may make it too late for Plaintiff Ashton to file, so Plaintiff Ashton is stuck again with having to file for things that should never have come into being; without legal background, except the basic principle that the courts are here for, and to serve the people. We are to have access to it for truth and justice to be served, and that these rights are being hindered by the processes allowed by State and through its' favoritism of attorneys and other entities over the rest of the populace.

49.     Plaintiff Ashton, when being threatened with arrest for her error in paperwork and daring to represent herself looked into and learned of the extreme violations and deficiencies in the jail of Flathead County and then statewide of State, thus further exacerbating her anxiety, and greatly scaring someone who is already delicate in build, and done nothing worthy of going to jail for, and in shock that these things are allowed to go on in the guise of "justice" through State's legal system, this resulting in heightening her thoughts of suicide yet again, and then leaving Plaintiff with that stress hanging over her head every day as well for some five months now, with no word from the Court. The State causes these to be allowed due to lack of proper oversight and training.

50.     Plaintiff Ashton has learned that Flathead County jail of State, has been rated worst in the nation for its' treatment particularly of those with either mental illness, or psychiatric injuries, including the "padded" cell, where in violation of civil rights, persons with emotional or mental distress can be locked, further increasing damages to their or anyone's psyche. Jail where death has occured, where rape victim has been placed w/o being taken to hospital, where

claustrophobic person was locked for days... These are torture, plain and simple, there is far more; That medical care is very substandard, and/or denied, that overcrowding is serious, is non ADA compliant, and would be further violation of Plaintiff Ashton's civil rights were she placed in there, besides those already afflicted. That isn't covering the whole jail system of State, just scratching the surface.

51.     Plaintiff Ashton learned that the entire prison system of State is being looked at by ACLU and Disability Rights of Montana, for their grievous violations in the treatment of human beings and is ongiong willful negligence by State.

52.     Plaintiff Ashton maintains that any society that treats those, even if awful offenders, in a less than civilized manner is in fact as bad, and quite likely worse than those it has incarcerated, shows indifference and in fact contempt of its' people, their equality in human rights, is in fact bullying and abuse on its' own being allowed to continue by State, does nothing to help rehabilitate or repair the problems that brought its' people to that place in the first place. It is a menace to the wellbeing of Plaintiff Ashton and all the people of State, by State.

53.     Plaintiff Ashton has been through this process also further damaged by seeing and experiencing the lack of training given to law enforcement officers on all levels in dealing with suicidal persons seeking help and/or the handling of those incarcerated. There appears to be no training on basic animal/human behavior, which a shocking stress state throws people into, they then do not themselves act on the higher level of consciousness tand/or through the heart to relate to the persons in question to handle things on the higher human, humane level. This also leads to detriment of the officers themselves, and can cause them psychiatric injury as well.

54.     Plaintiff Ashton maintains that there is no genuine "suicide by cop", only death by same,

Cause No. CV 15-96-M-DWM-JCL   p 13

because the matters were not handled in a humane, civilized manner.   It is inexcusable that this

happens to people calling for help to those who are to help, not cause permanent emotional

damage or death.  Even though Ashton's own event originally was peaceful enough, before going

to ER, even then she was afraid what possibly would happen if she declined going, and would

have resulted in more severe physical injuries as well; besides that she did not call for help, was

not in need of it at the time a call was made by an outside party, which while requiring a welfare

check, is not sufficient to take on its' own merits for anything further.  Also, how the h*** is

anyone helped by being further tormented, hunted, and damaged because of this thoughtless,

uninformed type of behavior, and keeping people up all night (swat team incidents)?  They aren't,

it needs to stop.

55.      State is negligent in overseeing producing and maintaining a humane mode of operation

across the board, is an affront to Plaintiff Ashton, and all persons of Montana. (Plaintiff realizes

that like herself, not all persons of Montana are aware of these problems, but once it truly comes

into their realm of knowledge any person of reasonable sensibilities would find it offensive and

appalling.)

56.      State is negligent in providing health care to all its' citizens and some, like the Plaintiff

Ashton, having deliberately been made indigent through the legislative and judicial process then

found this out because she is one of these citizens who falls through the holes, while being

denied legitimate coverage.  -That during the long process of applying for disability and/or SSI,

Medicaid, there is nothing available in the meantime of automatic coverage to deal with

necessary medical costs, of which she has need of several more expensive ones, and only

through the kindness of the County Community Health has she been able to get some of the

necessary care needed, by working on an agreement to delay payments while waiting to hear

from Court in original case, if Plaintiff Ashton will be thrown in jail for being made indigent and

representing herself.

57.        Likewise, related to the lack of available health care for all, Plaintiff Ashton

learned over the course of months from about autumn of 2014 forward, that there is no people

friendly, safe, useful aid for people who have been made seriously suicidal, and who is still here

just by her own attempts and the grace of God.  Not because of anything available for people

who have been caused to be, or any other reason in such a state of mind, or needing to talk

possibly about other serious matters, such as homicidal thoughts – given the amount of murders

in this state on top of suicides, it is negligent of State not to have these in place, it is aware of the

problems.

58.        Plaintiff Ashton and many others refuse to call so called help lines, because the help is

often not help, and often can result in worsening the problems, particularly if 911 is called w/o

the permission of the calling party.   Programs like ASIST need to be put in place at least as an

alternative, if not replacement, giving people a choice, a chance, and a hope of help, along with

the implenting of now nonexistant immediate per every county of State, 24/7 counseling, similar

to discussed in above ref. case.

59.        State knows these things are a serious problem in it, and has done nothing real and/or

substantial, causing violations of the civil and human rights of Plaintiff Ashton and all those in

State.  Particularly to maintaining a right to life, liberty, safety, and a pursuit of happiness.

60.        Defendant MMLP came into Plaintiff Ashton's life due to originating case, which

caused an unnecessary trip to the ER for services not rendered, malpractice, and other violations

of her rights including illegal detainment.   In an effort to deal with the ER hospital KRMC, which they refused, Plaintiff sought information to file suit.

61.      Only by accident did she come across the requirement to go through a bogus process designed to remove accountability from the medical community, being MMLP. She then made application, and saw very quickly it was for no purpose but to isolate and intimidate people, wear them out, cause undue stress, and cause them to give up on their case.

62.      Having looked at some of the statistics put out for years by MMLP, it is virtually impossible that roughly 99% of the medical malpractice claims are false.  The statistics are set up so as to be unable to determine the real outcomes of the initial claims, though it is known that they virtually always decide against the claimant.

63.      From their own website; "The Montana Medical Legal Panel was created to prevent, where possible, the filing in court of actions against health care providers and their employees for professional liability in situations where the facts do not permit at least a reasonable inference of malpractice *and* **to make possible the fair and equitable disposition of such claims against health care providers as are or reasonably may be well founded."**  It is not fair and/or equitable, but clearly biased against the individuals with the grievances, and is set up in such a manner that there is no balance on the panel with other nonmedical legal people who would clearly know in most cases if procedure violated what a person expects to receive from medical care, nor is it in any manner any type of mediation process.

64. Plaintiff Ashton has been dragged through this meaningless process, meaningless in that it bears no weight, other to cause people to abandon their case, and has found the same

Cause No. CV 15-96-M-DWM-JCL   p *16*

statement on website 3x's about MMLP.  Had her ADA rights violated through it, and

received further harm from it.  Plaintiff Ashton has acquired yet further injury to her

psyche through this process, and experienced panic attacks every single time she has had

to speak by phone to either the one attorney (that did calls at least sort of was trying to

reach a settlement, though using some less than ethical modes to try and coerce Plaintiff

Ashton), or any panel member.  This has nothing to do with protecting the people by

State, of good medical practice, of accountability, bringing about justice, or even in filing

a frivolous lawsuit.

65. Being many of the complainants would have an attorney, they are going to know if it is

frivolous or not when they file for court.  How many attorneys are going to do that?

Then there is also the illegal prescreening process already mentioned to prevent

"frivolous lawsuits".  MMLP is a thorn in the people's side and needs to be permanently

removed from impeding the people of State, who have the inherent right to bring

unfettered their complaints before a court of justice to be heard.  Plaintiff has knowledge

of several complainants who have been so damaged as to not be able to carry out their

civil rights by MMLP, including actions not specific to the limited malpractice scope of

MMLP.

66.   Defendants Apple, Tomkins, and Branscum as in intro. belong to Montana Medical

Association as well as MMLP.  This puts a clear bias on the part of their actions through MMLP.

Defendants Apple and Tomkins have repeatedly caused distress to Plaintiff Ashton's already

severely injured nervous/psyche system, adding additional physical tension, (requiring additional

medication, and is verifiable) by telling contradictory lies about what is, or is not, can be done,

allowing harassment through the email contact, such as asking for a report, which Plaintiff

finally got and sent, which they then also got and sent out after having bugged her for it through

the process; In not having her questions answered, in not being included where she apparently

should have been, and for the deliberate collusion of nondiscussion, silence, and avoidance of the

actual matter at hand.

67.     MMLP has apparently a two rule system, one for attorneys and one for pro se.   Plaintiff

got a string of emails she had been left out of all at once.  Plaintiff has been jumped on for not

sending things to everyone, so everything just went to everyone from then on.  MMLP, Apple,

Tomkins violated ADA privacy laws and accommodations of Plaintiff, sending out

accommodation request to the associated parties, caused Plaintiff to have to do more work to try

and make her own accommodatoins, bascially it appears part of MMLP tactics are to wear

people out by making them do unnecessary run around busy work.  They violated HIPAA by

gaining records they were not to have access to, that did not have specifically to do with the

incident in question.  MMLP is in violation of all of these.  Plaintiff Ashton believes

investigation through discovery will show a habit of this.

68.     In the course of events, Plaintiff Ashton ended up at an Glacier Eye Clinic for retinal

tear, that occured late April as a result from ER visit, but was not recognized as such or addresed

until about June 2015, after referral through County Clinic.  This included 3 visits which caused

further psychiatric damage, Plaintiff Ashton being chemically sensitive, suffered multiple days

afterwards from side effects, and Clinic unable to deal with such has been unable to finish follow

up care with them.

  69. Plaintiff Ashton having been by ER had the anger portion of PTSD added to her by their

Cause No. CV 15-96-M-DWM-JCL   p 18

horrible treatment towards her, and then with MMLP and KRMC in concert, (Just how frikkin' much is one person suppose to endure from people and entities who refuse to take responsibility for their actions, show no principals and don't care who they hurt or continue to harm? Wait; Plaintiff Ashton knows- it is enough to cause them to either go away or die.) put Plaintiff Ashton over the top with having to deal with Eye Clinic in July 2015. It is even past the anger part, but with agitation for lack of a better word at that point (Plaintiff has learned that what it is, is the extreme amount of pain finally having to come out, there is so much of it), on top of it all, there is just no way to describe it, but Plaintiff finally started having meltdowns, not only of crying from all the injuries originally caused by original case, but the anger and this now, that Plaintiff is well past the point of being able to think under the fright and freeze mode: The brain shuts down even more than it did in initial court proceedings, on top of the side effects of ES exposure, and CFS, and it became impossible for Plaintiff to continue with MMLP by phone or in person. She could not stand to look at any more of their emails.

70.    Emails in which they also lied, saying if they didn't hear from her in a couple days when one was sent out; knowing she was having computer problems, sometimes phone, they would call and let her know. - This did not occur. Plaintiff Ashton's internet was out for nine days. She did not receive one call. Apparently all the emails sent over this time do not involve her, or require any input by her. In any case even a couple more came in. Plaintiff Ashton could not stomach any more of the meaningless b.s. going on through them. The pointless phone conference that came before the hearing, went badly, or well, depending how you look at it.

Cause No. CV 15-96-M-DWM-JCL    p 19

71.     Plaintiff Ashton knew from just the episode a day or two before with Eye Clinic, that she was almost certainly going to have another meltdown with this meeting. She had gone to Dr. to get an additional tranquilzing Rx, because of the raises in her blood pressure it caused, and hoping to regain more balance, given the panic attacks and the now "I've had it, and I can't take any more of this garbage, (the pain has to come out)". Due to this and a still very staticky phone line, arranged with friend to do it at her office, so there would be someone around if she fell apart. The meeting lasted, at least with Plaintiff Ashton present about 4 1/2 minutes. Had it been longer, it would've gotten worse.

72.     When someone stabs you and you holler in pain, and then they tell you, you can't do that, there is something very wrong. This is similar to what has been progressively happening to Plaintiff Ashton throughout the various Defendants, and in this. In this meeting, Plaintiff hung up phone, and believed it disconnected. It did not, and the four persons on phone including Tomkins were joking, and laughing at Plaintiff Ashton. They were made aware she heard this. Plaintiff's friend, had come up and heard this. Plaintiff Ashton informed MMLP at the start that call was recorded, as she started doing to record most calls now that may come in to play in court. She played this for her counselor at her app't. who found it rather appalling that they would laugh at someone they know is in pain, has injuries, and had been informed they were adding to.

73.     Plaintiff believes they may still be trying to find a way to prevent her from being able to file her malpractice portion of the suit, by trying as was threatened early on with a "motion to dismiss". Plaintiff Ashton had previously been told by an attorney this appeared to be a very bad bluff, since it can still go to court.

74.     Apple left Plaintiff Ashton a phone msg. she later received after arriving home from phone conference threatening if she did not participate she would not be able to go to court basically, and that she couldn't just walk out of the hearing on the panel. Of course Plaintiff Ashton can, and almost guaranteed would if she was still able to function well enough to even appear in person, which she would have, just so they could see the condition and size of her. That became impossible, and she informed MMLP again of ADA accommodations, and that if they cancelled the hearing it would be their doing, not hers, and would not prevent her from doing so, and that she had just recently learned that if she had filed her case before the MMLP hearing was complete they needed to be informed of it, which she did, though hearing is now completed.

75.     In the one email response she replied back to Apple from her msgs. she had left on Plaintiff's phone, she also informed Apple that she had filed an affidavit with reason to file that small portion in the much bigger case before the finish. She also informed that due to the court treating the people it is here to represent like criminals that it was unlikely the case would move forward before the panel hearing was completed in any case, which is what has happened.

76.     Further, Plaintiff learned that if the other parties agree, the hearing need not be held. She had suggested it was pointless early on, esp. after ADA violations mucking things up. She was not told this could be let go, she found it herself. All in all, all the pages and pages of emails amount to nothing but a waste of time and harassment against Plaintiff Ashton. It has done nothing except cause more damages.

77.     Plaintiff Ashton expects MMLP will try and make arguments about its' immunities and not having to disclose certain things. Plaintiff Ashton claims they will, as the covert

activities by them have been fraudulent, included collusion, coercion, used to cause deliberate and negligent harm to the Plaintiff, caused her waste of time, life, energy, money in addition to all she has been undergoing with all the previous chain of events cases.

78.     This has been done to many, many people of State, and it is time for it to come to light.   It is a trespass against the rights of all the people of Montana as well as Plaintiff Ashton.  Any law that prevents the truth from being brought to light in court to support a cause, necessary to a case, and harming no person, is no legitimate law, and needs to be ruled on as such.  There needs in fact to be investigation into the abandoned and "settled" cases to see just how greivous the effects of this process by State and MMLP have been.  They were informed if they wanted to call her a whistleblower, then fine, but retaliation is not allowed under that aspect either.

79.     Defendant State also being in contempt of the US Supreme Court, puts it in contempt of its' own people.

80.     State does the same in the mismanagement of its renewable resources – forests, as mentioned previously.

81.     All these things are repugnant and offensive to the sensibilities of the people of Montana, to Plaintiff Ashton, especially knowing she is not the only one they happen to, that it is allowed to go on and on, shows deliberate indifference of the wellbeing of herself and those in this state, it is time for State to get out of the stone age, take some progressive leaps forward that are for the people they are actually here to protect and work for, and regain some confidence of the people in State, instead of continuing to degrade the very people it is to uplift.

## V. STATEMENT OF CLAIMS

Plaintiff incorporates all the above as if set forth herein in full.

82.     Plaintiff Ashton holds that the brief summaries under Counts do not preclude others from them, and should be evident to jurors to be able to decide who they believe is able to be considered under each, and have the right to do so. All Defendants have acted under color of law and by their actions and/or inactions have committed the various claims.

### COUNT 1. NEGLIGENCE

Plaintiff incorporates all the above as if set forth herein in full.

83.     All currently known defendants are negligent in carrying out their legitimate duties to and for Plaintiff Ashton and the people they are here to serve, and in preventing further damage to Ashton, people of State and selves. Likely doe defendants will fall under this and as well.

### COUNT 2. NIED

Plaintiff incorporates all the above as if set forth herein in full.

84.     Defendant Branscum falls under this, at this point it is unknown if she had any other interactions w/Plaintiff Ashton. All other Defendant's started under this.

### COUNT 3. IIED

Plaintiff incorporates all the above as if set forth herein in full.

85.     Plaintiff Ashton includes all defendants, due to habit, and/or being informed it was being caused her, and/or due to wilfull negligence.

Cause No. CV 15-96-M-DWM-JCL   p 23

## COUNT 4. VIOLATION OF PRIVACY

Plaintiff incorporates all the above as if set forth herein in full.

86.     Violation of HIPAA and ADA by MMLP, APPLE, Tomkins, and Branscum. By State in having the negligences it does, causing Plaintiff Ashton to need to take corrective actions for the sake of her own life, causing it more public exposure that should never need have come into being, causing medical records necessary for proceedings to have to come into play, and invasion of her life through these processes that never should have occurred.


## COUNT 5. VIOLATION OF CIVIL AND HUMAN RIGHTS

Plaintiff incorporates all the above as if set forth herein in full.

87.     These are numerous and many, against Plaintiff Ashton and the people of State, and includes the violation of civil rights to make personal recordings w/o the knowledge of all persons, as also found to be a violation in case against the state of Illinois, and being able to use them in court, hinders ADA rights, and aids illicit activities, rather than protecting people.

88.     Includes just about everything in this case including the abuses by the jail system, CPS, ODC, JDC, and as above, all is incorporated as if set forth herein, in full...


## COUNT 6. VIOLATION OF HUMAN RIGHTS

Plaintiff incorporates all the above as if set forth herein in full.

89.     These are numerous and many, against Plaintiff Ashton and the people of State. See above.  See necessity of and denial of legal counsel if this is not sufficient.


Cause No. CV 15-96-M-DWM-JCL   p 2¹|

## COUNT 7. WILLFUL NEGLIGENCE

Plaintiff incorporates all the above as if set forth herein in full.

90.    This is against all known defendants, and probably doe defendants.  Given that

either entities and parties either already knew they were negligent, or after being informed

continued to be so.

## COUNT 8. HARASSMENT

Plaintiff incorporates all the above as if set forth herein in full.

91.    This is evidenced throughout the case by all defendant's whether direct, intentional, or not.

## COUNT 9. NEGLIGENCE PER SE

Plaintiff incorporates all the above as if set forth herein in full.

92.    This should cover the bullying/stalking/abuse allowed to occur, evidenced through this

case.

## COUNT 10.  FRAUDULENT MISREPRESENTATION

Plaintiff incorporates all the above as if set forth herein in full.

93.    This is against all known defendants at this time.

## COUNT 11. BREACH OF GOOD FAITH

Plaintiff incorporates all the above as if set forth herein in full.

94.    State and all its' associated defendants entities and including through same, have

breached the good faith of the people in and of the state of Montana, including Plaintiff Ashton,

Cause No. CV 15-96-M-DWM-JCL    p 25

it has shown deliberate indifference, willful and not; negligence in the care of those it is here to

serve, violating their human and civil rights, causing state caused endangerment through physical

and nonphysical means of those under it, in its' functioning and forgetting its' real purpose, who

it is answerable to, violates ADA laws, rights to medical care, personal safety, mismanagement of

resources; violating clean air causing medical problems, and all else throughout complaint,

shows contempt to Plaintiff Ashton, the people of State, including showing contempt to the U.S.

Government as well.

## VI.  RELIEF

**WHEREFORE,**  Plaintiff Ashton prays for the following relief:

95.    MMLP be dissolved, or recreated as a genuine, unbiased mediation agency with

staff unafilliated with medical and State bar ties.

96.    JSC be investigated for replacement of staff not fulfilling roles, and required to act

on complaints, thus restoring faith to the people of Montana that there is oversight of the

judicial system that actually functions.

97.    ODC be investigated for proper functioning, and same as #2.

98.    State institute immediately humane standards for entire jail system, and bring in

outside party from nation with more ethical one to help design and set up such system,

such as from Norway, and also receive input from ACLU, Montana Disability Rights, and

start training all personnel involved on humane treatment of their fellow human beings,

and each other.

99.    State shall implement some program for its' entire jail system allowing access and

oversight by the public to ensure inmates are properly treated, and abuses stop.

100.      State shall immediately implement ASIST and maybe other SAFE for the

populace suicide prevention programs, so there is at least a known choice that 911 will

NEVER be called by the help line they call w/o the callers permission, thus protecting their

personal rights and dignity.  Also including per each county 24/7 available immediate

counseling for any individual needing it for minimal visits, and to help make known what

other assistance may be available.

101.      State shall immediately cause to cease Swat teams from ever being deployed on

any individual calling or seeking help for any suicidal tendency, and cause actual training

and availability to advocates for the people to address them.

102.       State shall prevent jails from being monopolized by outside agencies coming into

State creating likelihood of violations of human beings.   It shall also see that all newly

created jail facilities are able to meet disability accommodations including invisible

disability for or make alternatives available for such.  Plaintiff Ashton would like to be

appointed to help oversee that take place, along with human rights oversight in the new

Flathead County facility they are finally working on.

103.       Defendants Apple, Tomkins and Branscum shall pay portion of damages for pain

and suffering, emotional damages and harassment as determined by jury.

104.      Defendants ODC, JSC and MMLP shall pay higher portions as in #9, as

determined by jury.

105.       State shall pay the remaining portion of all damages of 3 million dollars requested

by Plaintiff, who reserves the right to change this amount if litigation continues to be

ongoing, and obtains ongoing damages to self and the populace.

106.    Any and all other awards the Court and/or jury may see fit to do, as allowable.

107.    Punitive damages to be paid by State, and MMLP.

108.    $500,000 to Plaintiff to use as she sees fit in oversight of new jail facilities of
Flathead County.

109.    State shall immediately work on reorganizing its' fire control budget to include
restarting logging operations which will help reduce fire, help restore the economy, stop
useless waste, reduce needless smoke pollution and waste of our environment.

110.    Payment for pain and suffering, and any other damages and amounts the Court
may decide are not allowable under some other settlement request here.

111.    To immediately investigate CPS and their associates, restore children to family
members within their own relations rather than foster care wherever possible, and see that
the purpose of it is fulfilled, rather than tearing families apart and leaving children in
abusive situations that should be removed from them, whether by their own parents, or
foster care.


        Plaintiff reserves the right to amend this complaint.

DATED this   9th   day of Sept.   2015.

        Robin Ashton

        Robin Ashton, Plaintiff pro se

                    VERIFICATION

STATE OF MONTANA )
                         ) ss.

Cause No. CV 15-96-M-DWM-JCL   p 28

County of Flathead        )

     Robin Ashton, being first duly sworn, deposes and says that she is the Plaintiff in

the above matter; that she has read the foregoing and that the facts and information

contained therein are true and correct to the best of her knowledge, information and belief.

                                    _Robin Ashton_

                              Robin Ashton, Plaintiff

            Dated:_Sept. 9/2015_

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all such issues which a jury may properly consider.


By:_____          Dated:_____

            Robin Ashton Pro Se
                Box 1168
            Marion, MT 59925
            406-755-0783